Booth, Judge,
delivered the opinion of the court:
This case has had an unfortunate, and in some respects a singular, career. On April 19, 1919, the plaintiff company brought, three separate suits against the United States in the United States District Court for the Eastern District of Pennsylvania, seeking recovery for the amounts involved in the present suit. Two. of the suits, Nos. 5990 and 5992, were for the recovery of all petroleum products supplied and delivered by the company prior to August 10,1917. The third suit, No. 5994, sought similar redress for supplies delivered subsequent to August 10, 1917. The defendants challenged the jurisdiction of the court in the premises, supporting their contention by an affidavit of defense sworn to by Commander Hancock, in which he avers, among other things, that jurisdiction to hear and determine the cases is vested by law in the Court of Claims. Following this, conferences and negotiations between the parties culminated in a stipulation whereby the plaintiff company agreed to dismiss the foregoing suits and commence the present one in this court. Manifestly, this stipulation, as asserted by counsel, was for the benefit and convenience of the defendant, as it removed the controversy to Washington, where all the records, proofs, and papers concerning the transactions were of easy access and availability. When the case finally came on for trial in this court the defendant challenged the jurisdiction of the court, predicating its contention on the passage of the tenth section of the Lever Act, 40 Stat. 276, asserting exclusive jurisdiction in the United States district court to determine the case. United States v. Pfitsch, 256 U. S. 547.
*119 Upon tlie facts then, as they now appear, the court, having upon its OAvn motion set aside and vacated its former judgment, a judgment rendered upon a misconception and misunderstanding of the attitude of the parties with respect to the case, and in view of the brief filed by the plaintiff company subsequent to said decision, must take the case and dispose of the same upon the present record.
The plaintiff company, as its name imports, is engaged in refining and selling products of petroleum, among others fuel oil, engine oil, and gasoline. On June 28, 1917, the Secretary of the Navy dispatched a letter to the plaintiff notifying the company “ to be prepared to furnish its proportion of the total quantity of fuel oil, engine oil, gasoline, and distillate required by the Navy for the period ending September 30, 1917.” The price to be paid for the quantities furnished was not then determined, but the company was assured of certain advance payments in accord with a schedule of prices enclosed in the letter, subject, however, to increase or decrease as the department might finally determine, the Navy Department assuming the position that the right existed to fix the price on a cost-plus basis.
The plaintiff company declined to furnish the supplies under this order, and as a result of its action received on July 7, 1917, a telegraphic communication from the Navy Department calling its attention to the acts of March 4,1917, 39 Stat. 1192, and June 15, 1917, 40 Stat. 182. On July 9, 1917, the plaintiff company responded to the above message, insisting that the defendant comply with one or the other of the above statutes, and emphasizing the fact that the order of June 28,1917, complied with neither. The plaintiff company was anxiously concerned about its rights to compensation under the acts of March 4 and June 15, 1917. It did not want to be put in the attitude of assenting to any lawful authority upon the part of the defendant to irrevocably fix the price of the supplies called for. It was obviously willing to supply the wants of the defendant under the foregoing statutes, wherein its rights to payment therefor were fully protected. A rather prolonged correspondence between the parties finally culminated in specific orders for supplies from the Navy Department to the plaintiff com *120 pany, in each of . which it is expressly stated that the supplies ordered are procured under the acts of March 4, 1917, and June 15, 1917. It is true that following the express order and recital of the laws under which it was issued the department elaborated its position and set forth its construction of the scope and operation of the statutes as affecting the case and delineated its rights as to the result of the passage of the statutes. Nevertheless, the procurement order had its origin in the rights conferred upon the defendant in virtue of the passage of the foregoing statutes and no one has disputed this fact and no one may, for except in one instance, where supplies were procured and delivered, the procurement orders antedated the passage of the Lever Act. It is true that the great bulk of the deliveries were subsequent to the passage of the Lever Act, but, except as indicated above, the deliveries were simply a compliance with the prior procurement orders, the plaintiff all the while protesting its unwillingness to be bound by the defendant’s exposition of its rights under the statutes referred to in section (b) of the procurement order.
The decisions of the Supreme Court in the cases of United States v. New River Collieries Co., 262 U. S. 341, and Houston Goal Co. v. United States, 262 U. S. 361, simplify the case and leaves the single debatable issue of jurisdiction. As to all supplies procured and delivered prior to August 10, 1917, no question of jurisdiction arises. Obviously as to these transactions no other statutes save the acts of March 4 and June 15, 1917, were applicable. Procurement orders and deliveries subsequent to this date are said by the defendant to come under the Lever Act, and indispensably so because the Lever Act operated as a repeal pro tanto of the former statutes referred to. The plain, unmistakable terms of every pi'ocurement order, irrespective of date, under which supplies were furnished and delivered, emphasizes the fact that the defendant was acting under the laws of March 4 and June 15, 1917. No express terms in the Lever Act assert a repeal of former emergency war legislation, and it is difficult by comparison to imply a repeal when the scope and field of operation of the laws in nowise conflict. The contemporaneous history of war legislation negatives a con *121 tention that Congress intended to make uncertain the power and authority of the President to requisition and procure supplies for the support of the Army and Navy and the successful prosecution of the war. The contrary intent prevailed, and Congress repeatedly sought to grant the widest authority and power. The mere fact that legislation toward this end repeated the subjects of the power and enlarged the authority theretofore given is not sufficient to warrant us in holding a partial repeal of preexisting laws on the same subject matter by implication, where in both instances the remedy provided for relief in case of dissatisfaction is ample and complete and the requirements of the fifth amendment to the Constitution fully met.
Congress having granted the authority and provided a remedy, it is difficult to perceive an intent to materially alter the remedy alone, in the midst of war, and create the incident confusion in the large number of instances where the power had been exercised in good faith under prior laws. In the absence of a more direct expression from which such an intent might reasonably be implied, we hesitate to so hold. The rule of law is directly to the contrary. In this case the officers of the Government invoking the law expressly purported to act under laws other than section 10 of the Lever Act. The requisitions were made under statutes passed anterior to the Lever Act, except in one instance, and the mere fact that deliveries occurred after the passage of the later law is not, in our opinion, sufficient to change the character of a transaction begun and concluded under a former valid law. The Supreme Court in the Pfitsch case, supra, ivas considering a requisition made under section 10 of the Lever Act long after its passage, a positive assertion of authority under its express provisions. The opinion recognizes the concurrent jurisdiction provided by section 24, paragraph 20, and section 145 of the Judicial Code as subsisting under the acts of March 4, 1917, and June 15, 1917, and is apparently limited to requisitions under section 10 of the Lever Act. No suggestion is found in the opinion that the power and authority to requisition is limited to section 10 of the Lever Act, and no statement that it is sufficienly compre *122 hensive to include requisitions made under other valid and contemporaneous laws.
This transaction in all its detail was inaugurated under existing law. The power exerted was justified under the terms of the act of June 15, 1917. The plaintiff company furnished the supplies under that impression, and certainly in a completed dealing of this character we would not be expected to go over and segregate each particular delivery made and again audit the accounts of the parties. Assuredly the tenth section of the Lever Act contemplated no such procedure.
On the authority of Seaboard Air Line Ry. Co. v. United States, 261 U. S. 299, the plaintiff is entitled to a judgment for $743,906.27 with interest thereon at the rate of six per centum per annum from July 19, 1919. It is so ordered.
Graham, Judge; Hat, Judge; DowNet, Judge; and Campbell, Chief Justice, concur.