## Southern Railway Company v. Consumers' Fuel Company.

(Decided May 27, 1924.)

### Appeal from Bell Circuit Court.

1. Eminent Domain—No Emergency Ever Supersedes Provisions of Constitution Requiring Just Compensation.—No emergency, however great, ever supersedes provisions of Const. U. S. Amend. 5, requiring just compensation, and railroad confiscating coal under Lever Act, section 25 (U. S. Comp. Stats. 1918, U. S. Comp. Stats. Ann. Supp. 1919, section 3115⅛q), must pay market value, and not less price fixed by order of President, and such statute is unconstitutional to that extent.

2. Constitutional Law—Value of Coal Confiscated by Railroad Must be Determined by Courts, and Not Executive Department.—Value of coal confiscated by railroad under Lever Act, section 25 (U. S. Comp. Stats. 1918, U. S. Comp. Stats. Ann. Supp. 1919, section 3115⅛q), must be ascertained by judicial proceedings, and cannot be determined by Executive Department.

3. Carriers—Court Held to Properly Admit Evidence as to Market for Confiscated Coal for Export Purposes.—In action against railroad which confiscated coal under Lever Act, section 25 (U. S. Comp. Stats. 1918, U. S. Comp. Stats. Ann. Supp. 1919, section 3115⅛q), intended for export, court properly admitted evidence as to market for coal for export purposes at place from which coal was shipped.

4.   Trial—Correction of Instruction and Verdict.—When verdict was
     reported, and it was discovered mistake had been made in instruc-
     tion with reference to date from which plaintiff. was entitled to
     interest on judgment, court properly changed instruction, and had
     jury change verdict.

5.   Carriers—Railroad Confiscating Coal Liable for Interest from Date
     of Demand.—Exporter of coal was entitled to recover interest
     from railroad confiscating coal, but refusing to pay market value,
     in view of Lever Act, section 25 (U S. Comp. Stats. 1918, U. S.
     Comp. Stats. Ann. Supp. 1919, section 3115⅛q), from date of de-
     mand.

HUMPHREY, CRAWFORD & MIDDLETON and WILLIAM LOW
for appellant.

T. G. ANDERSON for appellee.

OPINION OF THE COURT BY SANDIDGE, COMMISSIONER—
Affirming.

The appellee, Consumers' Fuel Company, is a Ken-
tucky corporation engaged in the coal brokerage business
at Middlesboro, Kentucky.  In the month of March, 1920,
it purchased from various mines in the Middlesboro dis-
trict 46 carloads of coal which it had shipped over the
lines of appellant, Southern Railway Company, consigned
to ports on the Atlantic seaboard at Charleston, South
Carolina, and Savannah, Georgia, as it alleges, for ex-
port.  The coal in question was confiscated by appellant.
Appellee sued to recover the value of the coal, which it
alleged was worth $7,801.51, admitting receipt of $5,765.-
10, received, however, under stipulation preserving the
rights of the parties as to the controversy, and asking
judgment for the balance of $2,036.41.  Appellant sought
to justify the taking under the provisions of section 25
of the act of Congress, approved August 10, 1917, com-
monly known as the Lever Act, and the executive orders
issued by the President under authority of same, and
claimed that the $5,765.10 paid by it to appellee settled
for the coal in question at the prices fixed by executive
orders issued under authority of the act above.  Appellee
claimed that the act above, in so far as Congress and the
executive undertook to fix the rate at which coal might
be paid for when confiscated under the circumstances,
is in contravention of the Fifth Amendment of the Fed-
eral Constitution and hence void, and that it was entitled
to recover the market value of the coal at the time and
place taken.  The above in brief recites the issues made

by the pleadings. The court below by instructions directed the jury in substance to find for appellee such a sum in damages as it had suffered by the conversion of the coal in question, fixing the measure of damages as the fair market value of the coal at the time and place taken. A peremptory instruction was offered by appellant to find for it, which the court overruled. The jury found for appellee the amount sued for, to-wit, $2,036.41, and judgment was entered thereon in favor of appellee. Appellant filed its motion and grounds for a new trial in due time, which were overruled, and this appeal has been prosecuted.

As presented by the appeal, its settlement turns upon a determination of the question as to the constitutionality of section 25 of the Lever Act and the executive orders issued thereunder, in so far as they undertook to fix the price which a railroad company should pay for coal confiscated by it under authority from them. It is urged by appellant that the emergency arising out of the war with Germany authorized and validated the legislation with reference to the coal industry of the United States and its price-fixing features as provided for in the act above. Appellee contends that that section of the Lever Act is violative of the Fifth Amendment and that the state of war and the emergency growing out of same did not and could not supersede the provisions of the Fifth Amendment to the Federal Constitution.

In so far as involved by this appeal, a number of cases have recently been before the United States Supreme Court involving the same question. In United States v. Cohen Grocery Company, 255 U. S. 81, 65 L. Ed. 516, that court said:

"We are of opinion that the court below was clearly right in ruling that the decisions of this court indisputably establish that the mere existence of a state of war could not suspend or change the operation upon the power of Congress of the guaranties and limitations of the Fifth and Sixth Amendments as to questions such as we are here passing upon. Ex Parte Milligan, 4 Wall. 2, 121-127, 18 L. Ed. 281, 295-297; Monongahela Nav. Co. v. United States, 148 U. S. 312, 336, 37 L. Ed. 463, 471, 13 Sup. Ct. Rep. 622; United States v. Joint Traffic As., 171 U. S. 505, 571, 43 L. Ed. 259, 288, 19 Sup. Ct. Rep. 25; McCray v. United States, 195 U. S. 27, 61, 49 L. Ed, 78, 97, 24 Sup. Ct. Rep. 769, 1 Ann. Cas. 561; United States v.

Cress, 243 U. S. 316, 326, 61 L. Ed. 746, 752, 37 Sup. Ct. Rep. 380; Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U. S. 146, 156, 64 L. Ed. 194, 199, 40 Sup. Ct. Rep. 106. It follows that, in testing the operation of the Constitution upon the subject involved, the question of the existence or nonexistence of a state of war becomes negligible and we put it out of view."

In United States v. New River Collieries, 262 U. S. 342, a case in which the New River Collieries had sued the United States to recover the value of 60,000 tons of coal requisitioned from it under the provisions of section 10 of the Lever Act, judgment was given the company in accordance with the verdict of the jury fixing the prices in excess of those allowed by the President. We quote the following from that opinion as being conclusive of the question presented by this appeal:

"Section 10 of the Lever Act, in obedience to the Fifth Amendment, provides for just compensation. The war or the conditions which followed it did not suspend or affect these provisions. United States v. Cohen Grocery Co., 255 U. S. 81, 88. The owner was entitled to the full money equivalent of the property taken, and thereby to be put in as good position pecuniarily as it would have occupied if its property had not been taken. Seaboard Air Line Ry. Co. v. United States, 261 U. S. 299, and cases cited. The ascertainment of compensation is a judicial function, and no power exists in any other department of the government to declare what the compensation shall be or to prescribe any binding rule in that regard. Monongahela Navigation Co. v. United States, 148 U. S. 312, 327. Where private property is taken for public use, and there is a market price prevailing at the time and place of the taking, that price is just compensation. Vogelstein & Co. v. United States, decided this day, ante, 337; United States v. Chandler-Dunbar Water Power Co., 229 U. S. 53, 80, 81; Boom Co. v. Patterson, 98 U. S. 403, 407. More would be unjust to the United States and less would deny the owner what he is entitled to."

The authorities seem to be unanimous in holding that the emergency of war may justify a summary taking of private property for public use; but that no emergency, however great, ever supersedes the provisions of the

Fifth Amendment requiring that just compensation must be paid to its owners when so taken. No case has ever upheld an attempt on the part of the legislative or executive departments of the government to fix the rate at which compensation shall be paid for or the value of property so taken. It has been uniformly held that the question of just compensation for private property taken for public uses in any emergency and under any circumstances is one for judicial ascertainment alone. Hence, we conclude that section 25 of the act of Congress, *supra,* and the executive orders issued under its authority, in so far as they undertook to fix the rate at which a railroad company might pay for coal confiscated by it, are violative of the Fifth Amendment and void; and that for coal confiscated under the act above and executive orders issued thereunder, a railroad company is liable to its owner for its market price, to be ascertained by judicial proceeding.

In the case now under consideration, appellee established by proof the allegations of its petition as to the quantity and weight of the coal taken by appellant. It established that there was at Middlesboro, Kentucky, from which all this coal was shipped, an export market for coal. It established that the value of the coal sought to be recovered by the petition was at the then prevailing market price for export coal at that place. It established that it bought this coal from the mines and had it consigned to seaports on the Atlantic coast for export purposes, and that it had this coal sold for export trade. There was no testimony to the contrary in the record. As said in United States v. New River Collieries above: "The owner was entitled to the full money equivalent of the property taken, and thereby to be put in as good position pecuniarily as it would have occupied if its property had not been taken." The court below properly admitted the evidence as to the market for coal for export purposes at the place from which this coal was shipped, and properly instructed the jury to find for plaintiff the value of the coal converted by defendant at its fair market value.

In the motion and grounds for a new trial, appellant complained of the action of the trial court in changing the instruction given with reference to the date from which the judgment should draw interest and having the jury change its verdict in conformity thereto after the verdict had been reported. When the verdict was reported by the jury, it was discovered that a mistake had been made in the instruction with reference to the date

from which plaintiff was entitled to have interest on the judgment in the event the jury found for it. The instruction given authorized interest from April 5, 1921, instead of 1920, as it should have been. When this mistake was called to the attention of the court, and before the jury had been discharged, the correction was made and the verdict of the jury changed in conformity with the changed instruction.

We perceive no error in this, as the appellee was entitled to interest from the date demand was made of appellant for the amount due it. There is no controversy about April 5, 1920, being the date appellee demanded of appellant the additional sum of $2,036.41. The changing of the date in the instruction and the change of the verdict accordingly to provide for interest from the correct date in nowise prejudiced the rights of defendant. The real question to be submitted to and decided by the jury was the value of the coal taken. The jury's determination of the real issue submitted to it in favor of plaintiff entitled it to interest from the date of demand, and the change in the instruction and in the verdict of the jury, conforming to the instruction, in nowise prejudiced the rights of defendant.

For the foregoing reasons, the judgment in this case is affirmed.

Whole court sitting.