## Commonwealth v. Lehigh Coal and Navigation Company

*Philip S. Moyer*, deputy attorney general, and *William A. Schnader*, attorney general, for Commonwealth.

*W. J. Turner* and *S. D. Matlack*, for defendant.

HARGEST, P. J., March 3, 1932.—The defendant has appealed from the settlements of the anthracite coal tax for the periods ending May 31 and December 31, 1929, made against it by the secretary of revenue on April 16, 1930, and approved by the auditor general on April 21, 1930, a petition for review having been refused by the board of finance and revenue on January 14, 1931. A stipulation to dispense with trial by jury has been filed and the facts have been agreed upon.

## Facts

For the purpose of discussion, we state only a few of the pertinent facts. The defendant reported valuations of coal for the purpose of the settlement of the anthracite coal tax for the periods above mentioned from its eight collieries, amounting to $18,659,997.40. Before reporting said valuations it had deducted a selling expense of 23.8 per cent., amounting to $813,808.53, made up of various items, including administrative officers' salaries, accounting officers' expenses, salaries and expenses, storage expenses, advertising, collection expenses, depreciation of salesmen's automobiles and other items specifically set out in the sixth paragraph of the agreed statement. The accounting officers, being unwilling to allow such deductions, added them to the reported valuations, making the total $19,473,799.20. The company paid a tax of $227,385.32 on the valuation reported by it. The accounting officers settled a tax of $237,283.54, leaving a balance involved in this appeal of $9898.22.

We also find the following facts:

1. The circular price or average selling price received by the defendant was the market value of the coal at the mine at the time when the said price was received.

2. The consignees in all cases paid the freight.

3. The coal was all prepared for market before it was stored.

4. The market value of the coal in question consists of the items shown on the last column of paragraph six of the agreed statements of facts, aggregating $19,473,799.20.

## Discussion

The question is whether such expenses may be deducted before the settlement of the anthracite coal tax is made. Section one of the Act of May 11, 1921, P. L. 479, as amended by the Act of May 17, 1929, P. L. 1806, provides, in part, as follows:

"That from and after the passage of this act, each and every ton of anthracite coal, of the weight of two thousand two hundred and forty (2240) pounds avoirdupois, mined, washed, screened, or otherwise prepared for market, . . . shall be made subject to a tax of one and one-half per centum . . . of the value thereof when prepared for market, which said tax shall be assessed at the time when said coal has been mined, washed or screened, and is ready for shipment or market."

The section quoted grades the tax from one and one-half per cent. down to one-half of one per cent., and provides that no tax shall be assessed after May 31, 1931.

Section two of the Act of 1921 provides in part:

"It shall be the duty of the individual, or the superintendent or other officer, in charge of any mine or mines, or washery, or operation, to assess the tax hereby imposed, from time to time, as the coal is mined, washed, or screened, and is ready for shipment or market, and to ascertain and assess daily the number of gross tons of coal so mined, washed, or screened, and to fix the value thereof."

The officer in charge of the mine is required by said section to annually "report in writing, under oath, to the auditor general . . . stating specifically the number of gross tons of coal hereby made taxable, and the assessed value thereof during the calendar year covered by the report, and the amount of tax assessed thereon."

The question before us involves the meaning of the language "value of coal when prepared for market."

Barber's Estate, 304 Pa. 235, 240, has repeated what has been said many times before with reference to taxing statutes:

"Words should be interpreted in their popular meaning. . . . The underlying principle of construction is to ascertain the legislative intent and give effect to it. As the Commonwealth is seeking to impose a tax on the property, the burden is on it to show that it clearly came within the tax statute. If there is doubt or uncertainty as to the imposition of the tax, that doubt or uncertainty should be resolved in favor of the taxable."

In 8 Words and Phrases, 7278, it is said:

"The 'value' of property is what it would sell for within a reasonable time from that in which the value is sought to be ascertained."

See, also, 4 Words and Phrases (2d series) 1140; Pope's Legal Definitions "Value," 1634.

This is a case in which the coal always had a market value because there were prevailing prices.

In United States v. New River Collieries Co., 262 U. S. 341, it was held:

"Evidence of the cost of production, and of what would be a reasonable profit, to the owner, is inadmissible when market prices prevailing at the time and place of the taking, have been established beyond controversy."

In that case evidence was excluded to show the owner's cost of production and a reasonable profit.

The statute in this case plainly imposes a tax on every ton of coal "mined, washed, screened or otherwise prepared for market," and the tax is required to be assessed "at the time when said coal has been mined, washed or screened and is ready for shipment or market." The tax is required to be assessed daily. How, then, after the tax is assessed, can the valuation be changed so as to effect a reduction of tax? The coal is prepared for market before it is stored, yet the defendant argues that storage charges should be subsequently deducted. Deducted from what? If deducted from the value of the coal, then such charges are deducted from the market value at the time when it was prepared for market and before the charges are incurred. This statute imposes a tax on the property, qua property, as it appears when prepared for market. It is not a tax on profits. Yet the whole argument of the defendant resolves itself into a proposition to levy the tax on the profit which the operator has in the coal after deducting certain expenses and charges. In our opinion, the statute is so plain that further discussion is unnecessary. It follows that, the tax having been legally assessed upon the gross value of the coal when prepared for market, the defendant had no right to deduct selling expenses in an attempt to reduce the tax required to be daily assessed and which necessarily must have been assessed before the selling and storage expenses were incurred.

These settlements were made and approved April 21, 1930:

| | |
|---|---:|
| Amount of tax | $9,898.22 |
| Interest from July 20, 1930, being ninety days after date of settlement | 974.98 |
| | $10,873.20 |
| Attorney general's commission of five per cent | 543.66 |
| | $11,416.86 |

Now, March 3, 1932, judgment is hereby directed in favor of the Commonwealth and against the Lehigh Valley Coal and Navigation Company in the sum of $11,416.86, unless exceptions be filed within the time limited by law.

From Homer L. Kreider, Harrisburg, Pa.