**CENTRAL STATES LIFE INS. CO. v. KOPLAR CO. et al. (two cases).**

**Nos. 10595, 10651.**

Circuit Court of Appeals, Eighth Circuit.

Aug. 12, 1936.

182

R. H. McRoberts, of St. Louis, Mo. (George B. Logan, Cobbs & Logan, and Bryan, Williams, Cave & McPheeters, all of St. Louis, Mo., on the brief), for appellant.

B. L. Liberman, of St. Louis, Mo. (Robert Burnett, Henry H. Stern, and Burnett, Stern & Liberman, all of St. Louis, Mo., on the brief), for appellee Koplar Co.

Frank H. Sullivan, of St. Louis, Mo. (Abraham Greenspahn and Poppenhusen, Johnston, Thompson & Raymond, all of Chicago, Ill., and Sullivan, Reeder & Finley, of St. Louis, Mo., on the brief), for reorganization managers.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

This appeal (which was allowed by both this court and the United States District Court) is from an order denying the appellant's motion to modify an order "classifying creditors and stockholders, determining the time and manner for filing of claims, and providing for submission of plan of reorganization." The proceeding is one under section 77B of the Bankruptcy Act (11 U.S. C. § 207 [11 U.S.C.A. § 207]).

The facts leading up to the making of appellant's motion will be found stated in detail in the opinion of this court in Central States Life Insurance Co. v. Koplar Co., reported in 80 F.(2d) 754. There the appeal was from an order denying the appellant permission to foreclose the trust deed securing the first mortgage bonds on the Park Plaza Hotel in St. Louis, for the purpose of ascertaining a deficiency. The order appealed from was affirmed, and this appeal comes to us upon the same evidence and substantially the same record.

Stated briefly, the situation with which we are now dealing is this: The debtor, the Koplar Company, owns several heavily encumbered hotel and apartment properties in St. Louis, Mo.: (1) The Park Plaza Hotel property, subject to a first mortgage bond issue of $3,070,000 owned by the appellant, and to a second mortgage bond issue of

$1,090,000; (2) the Congress Hotel and Senate Apartment properties, subject to a first mortgage bond issue of $1,795,000; (3) the Embassy Apartment property, subject to a first mortgage bond issue of $544,000. These properties are and have been unsalable. The bonds have been long in default, and the bondholders, through trustees, have been in possession of the properties. The purpose of the reorganization proceeding was obviously to salvage something, if possible, for the unsecured creditors and stockholders of the debtor.

The debtor presented a proposed plan of reorganization which affected only the Senate and Congress properties and the Embassy property, and left undisturbed the Park Plaza property. Two corporations were to be organized, one to take over the Embassy property, and the other to take over the Congress and Senate properties. The holders of the mortgage bonds on each of those properties were to receive new bonds equal to their present holdings and with the same security. The stock of the new corporations was to be deposited with trustees. If the earnings from the properties failed to yield a specified rate of income to the bondholders, or if the new bonds were not paid at maturity, the stock was to belong to the bondholders. If the specified rate of income was earned and paid to the bondholders, and the new bonds were paid at maturity, the trustees were to turn over the stock, (a) to general creditors, 35⅓ per cent.; (b) to Sam Koplar, guarantor of the new bond issue and manager of the properties under a proposed management contract, 32⅓ per cent.; and (c) to preferred stockholders, the balance.

The appellant was not classified as a general creditor under the proposed plan, because it was regarded as having ample security for the first mortgage bonds on the Park Plaza property. The second mortgage bondholders were included among general creditors, for whatever sum the court might determine to be the excess of the indebtedness to such bondholders over the fair value of their security, having regard to the senior encumbrance.

The appellant has earnestly and persistently claimed that the amount of the indebtedness of the debtor to it, which is secured by the first deed of trust upon the Park Plaza property, exceeds the fair market value of that property, and that, to the extent of the excess of indebtedness over value, the appellant should be classified as a general creditor. It contends that, if the plan is approved, appellant "is permanently deprived of the right to recover against the Koplar Company the amount of any deficiency on its claim to the extent of the very valuable equities of the Koplar Company in its other properties."

The purpose of appellant in applying to the court for an order to permit foreclosure was to have a foreclosure sale in order to establish the existence of a deficiency. The purpose of the order to modify the classification of creditors and stockholders was to secure a determination either that a deficiency presently existed or that matters should be held in status quo until it could be determined whether one did not exist.

The court below, after considering the evidence relating to the value of the Park Plaza property, found that the appellant was amply secured, and that it was not a creditor "materially and adversely affected" by the proposed plan of reorganization. For that reason, the court denied the motion of the appellant to modify the order of classification, and subsequently denied its petition for a rehearing of that motion.

The appellant challenges the sufficiency of the evidence to support the finding of the court that the value of the Park Plaza property is in excess of the amount due the appellant upon the first mortgage bonds. There was evidence of the cost of the property in 1929, evidence of reproduction cost new, of earning capacity under favorable conditions, of book value, and of the value of appellant's bonds as reflected by its books and its reports to the insurance departments of the several states in which it does business—all of which tended to support the finding of the court below as to value. On the other hand, there was evidence that there was no present market for the property and that the income from it during the depression years would not yield a reasonable rate of return upon any value which approached the amount due the appellant under the first mortgage bonds.

The finding that the security for the bonds owned by the appellant is ample is supported by substantial evidence. Cost, reproduction cost, and use value constitute evidence which may be considered in determining fair market value. Hard & Rand v. Biston Coffee Co. (C.C.A.8) 41 F.(2d) 625, 627; Union Electric Light & Power Co. v. Snyder Estate Co. et al. (C.C.A.8) 65 F.(2d) 297, 305. The value of the bonds on the Park Plaza as reflected by the books

of the appellant and by its annual statements to the departments of insurance, which represented that these bonds were amply secured, was evidence to be considered in determining the fair value of the security. See Northern Pac. Ry. Co. v. Helvering (C.C.A.8) 83 F.(2d) 508, 517. The fact that no present market exists for the Park Plaza Hotel property does not prevent a determination of fair market value. The courts always have recourse to that hypothetical individual, "the willing purchaser," and can determine from competent evidence what he would pay as the result of fair negotiations.

In Olson v. United States, 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236, the Supreme Court said: "Flowage easements upon these lands were not currently bought or sold to such an extent as to establish prevailing prices, at or as of the time of the expropriation. As that measure (United States v. New River Collieries Co., 262 U.S. 341, 344 [43 S.Ct. 565, 67 L.Ed. 1014]) is lacking, the market value must be estimated. In respect of each item of property that value may be deemed to be the sum which, considering all the circumstances, could have been obtained for it; that is, the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy. In making that estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining." See, also, Karlson et al. v. United States (C.C.A.8) 82 F.(2d) 330, 337.

■ Whether the fair market value of the Park Plaza property exceeded the indebtedness due the appellant was a question for the court below to determine from the evidence. We would not be justified in holding that the earning capacity of the property during the depression years should alone be considered in ascertaining its value. In the absence of palpable error, we must abide by the finding of the judge who heard the evidence. Columbia Pictures Corporation v. Lawton-Byrne-Bruner Ins. Agency Co. (C.C.A.8) 73 F.(2d) 18, 20; Hays et al. v. Harris et al. (C.C.A.8) 78 F.(2d) 66, 71; Hill v. Douglass (C.C.A.9) 78 F.(2d) 851, 853, 854; Gorman et al. v. Shaffer Oil & Refining Co. et al. (C.C.A.10) 74 F.(2d) 610, 612; Gaskins et al. v. Bonfils et al. (C.C.A.10) 79 F.(2d) 352, 357; Humphrey et al. v. Bankers Mortg. Co. et al. (C.C.A. 10), 79 F.(2d) 345, 351; Arkansas Natural Gas Corporation et al. v. Pierson et al. (C.C.A.8) 84 F.(2d) 468.

Our acceptance of the facts found by the court below we think determines this controversy. True, the appellant, by the proposed plan, will lose the right to proceed against the debtor for a deficiency, but, if there is no deficiency, the appellant has lost nothing but a theoretical right. There is nothing in the record to show what, if any, value the equity in the properties included in the plan of reorganization has. Under appellant's own theory that where there is no market there is no market value, the equity would be worthless. Our impression is that the plan of reorganization merely proposes the capitalization of a hope for the future for the possible benefit of unsecured creditors and stockholders of the debtor.

Section 77B, subdivision (b), clause (10), 11 U.S.C.A. § 207 (b) (10), provides: "No creditor or stockholder shall, for the purposes of this section be deemed to be affected by any plan of reorganization unless the same shall affect his interests materially and adversely."

■ It was the opinion of the court below that, in view of all the circumstances, since the proposed plan did not disturb the appellant's security, and since the value of the security was greater than the amount of the indebtedness secured, the appellant was not a creditor whose interests were materially or adversely affected by the proposed plan. We are of the same opinion.

The order appealed from is affirmed.