**UNION NAT. BANK OF PITTSBURGH et al. v. DRISCOLL.**

**SAME v. UNITED STATES.**
Civ. A. Nos. 409, 410.

District Court, W. D. Pennsylvania.
April 8, 1940.

Paul G. Rodewald, Emory R. Kyle, and Smith, Buchanan & Ingersoll, all of Pittsburgh, Pa., for plaintiff.

Geo. Mashank, Acting U. S. Atty., of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge.

These two suits are to recover estate taxes alleged to have been overpaid by the executors of the Estate of Taylor Allderdice, deceased, who died on May 20, 1934. Part of the alleged overpayment was made to the defendant Collector in suit at Civil Action No. 409, and part to the Collector out of office at Civil Action No. 410. Therefore, two suits were necessary, one against Driscoll, Collector, and the other against the United States.

By agreement of the parties, both suits were tried together without a jury as one, and it was further agreed that the suit against the United States (Civil Action No. 410) be decided by the record in the suit at Civil Action No. 409.

The plaintiffs have abandoned their claim set forth in paragraph 3(b) of the complaint for a deduction due to succession-taxes paid to the Provinces of Quebec and Ontario, Canada. The defendant concedes that the plaintiffs are entitled to deduct, as claims against the estate, the items set forth in paragraph 3(a) to (c) inclusive of the complaint, less the amount of the estate recovered from Norman Allderdice and from the estate of Lawrence Allderdice, deceased.

The matters in dispute are: (1) the proper valuation of decedent's real estate at No. 5727 Wilkins Avenue, Pittsburgh; (2) the proper valuation of the common stock of the Pittsburgh Screw & Bolt Corporation; (3) was the amount of the widow's exemption allowed by the laws of Pennsylvania properly included in the valuation of decedent's estate subject to tax by the United States.

I. Real Estate 5727 Wilkins Avenue
Pittsburgh.

■ In the estate tax return, this real estate was valued at $25,000. The Commissioner of Internal Revenue valued it at $35,000. The evidence offered by the plaintiffs establishes that the fair market value of this real estate was $15,400; and we so find. The defendant offered no controverting testimony. This property consists of a dwelling house, garage and land occupied by decedent in his lifetime as a residence. There was at the time of his death little or no market for property of this character. The house was built many years ago. We doubt whether it could be sold or rented. The value of the property rests almost exclusively in the land itself; the house would have to be torn down, as have many dwelling houses in this vicinity within the last few years. We have no hesitation in finding that $15,400 represents the fair market value of this real estate at the time of the death of decedent. This was established by real estate dealers familiar with the market value of real estate in the vicinity of this real estate. We cannot find either that the plaintiffs are concluded by the value placed on this property in the tax return.

II. Stock of the Pittsburgh Screw
& Bolt Corporation.

■ This stock was reported in the estate tax-returns at a value of $7.75 per share. The Commissioner valued the stock at the same value in making the assessment. The standard of value contemplated by the taxing statute is the fair market value of the property at the date of death. This fair market value is defined as the price at which the property would change hands between a willing buyer and a willing seller, neither under compulsion to buy

or sell. Other less conclusive evidence of value is not resorted to in the determination of value when market value is evidenced by sales in a free, open, and active market in which prices are determined by supply and demand. See Standard Oil Co. v. Southern Pacific Co., 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890; United States v. New River Collieries, 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014; Grant Co. v. Duggan, 2 Cir., 94 F.2d 859; Hazeltine Corp. v. Commissioner, 3 Cir., 89 F.2d 513; Commissioner v. Robertson, 6 Cir., 75 F.2d 540. The plaintiffs contend that there are factors in the instant case which take the case out of the general rule, i. e., the fact that only 100 shares of this stock were sold on the stock exchange on May 19, 1934, at $7.75, the day before decedent's death; and that 300 shares thereof sold on May 21, 1934, at $7.75 is not conclusive evidence that 25,748 shares of the stock would have sold in the open market at that time at that price. The plaintiffs offered evidence to the effect that if a block of that stock amounting to 25,748 shares had been offered in the open market at that time, not more than $6 per share could have been obtained from such sale.

On this phase of the case, the defendant contends that there were no unusual or peculiar circumstances which would make this case an exception to the general rule. With this we agree. McNeil, plaintiffs' expert witness as to values, testified (R. 72) that the prices of this stock prevailing on the market at the time of the death of Allderdice were fair for the volume that was being traded; but that the price in the market should be discounted because of the volume of stock involved in this case. In this conclusion of the witness we cannot concur. On December 31, 1933, there was outstanding in the hands of the investing public, 1,434,553 shares of this stock. There were no facts in regard to the Pittsburgh Screw & Bolt Corporation, or market conditions existing in May, 1934, that were not available to investors at that time. From January 6, 1934, to May 18, 1934, 182,100 shares of this stock were traded on the New York Stock Exchange at prices ranging from $7⅛ to $11⅜. The weekly trading varied from a high of 36,900 shares to a low of 1,000 shares. From March 20, 1934, to May 20, 1934, 78,100 shares of this stock were traded in the New York Stock Exchange. The daily trading varied from 15,200 shares to 100

shares. These 15,200 shares were traded on April 3, 1934, when the market showed a net advance of $3.8 per share, and closed at $11¼ per share.

We are of the opinion that the Commissioner correctly found that the fair market value of this stock, at the date of the death of Taylor Allderdice, was $7.75 per share. This view is supported by the opinion of Judge Maris in Hazeltine Corp. v. Com'r., 3 Cir., 89 F.2d 513, 519.

III. The Widow's Statutory Exemption of $500 under Pennsylvania Law.

Section 12 of the Pennsylvania Fiduciaries Act of 1917, P.L. 447, 20 P.S. § 471, provides: "Section 12. (a) The widow, if any, * * * of any decedent dying, testate or intestate, within this Commonwealth, * * * may retain or claim either real or personal property, or the proceeds of either real or personal property, belonging to [the] estate, to the value of five hundred dollars; * * *."

The Pennsylvania Supreme Court has held that this exemption is not subject to the inheritance tax imposed by the Pennsylvania Act of July 11, 1917, P.L. 832, providing that "All estates * * * passing from any person * * * either by will or under the intestate laws * * * are * * * subject to the tax of two ($2) dollars on every hundred dollars of the clear value of such estates." See Hildebrand's Estate, 262 Pa. 112, 104 A. 866. In this case, Orphans' Court Judge Saith, Trial Judge, said:

"The commonwealth cannot prevail because the inheritance tax act does not authorize its action. It provides that only 'clear value' of a decedent's estate is taxable, and the clear value of an estate is only that which remains after all claims against it have been paid. A widow's exemption is a 'preferred claim,' and, therefore, must first be met. It is a 'gift of the law prompted by considerations of public policy.' Beetem & Co. v. Getz, 5 Pa.Super. 71; Peebles' Estate, supra [157 Pa. 605, 27 A. 792].

"An estate that passes 'either by will or under the intestate laws' is subject to the tax, but a widow's exemption is not such an estate. It does not come by either of these ways. It is neither a legacy or devise, nor an inheritance. Subject to a purchase-money lien it is preferred to all claims against an estate. By asserting it the amount of it ceases to be regarded as part of a decedent's estate. Against it a

decedent's creditors, legatees, devisees, or distributees cannot prevail. Peebles' Estate, supra. The action of a widow properly claiming it distinguishes it as her estate; which had been held in abeyance by her husband during his life. The act says it is something which she may 'retain,' thus pointedly implying ownership.

"Such exemption is a wife's inchoate property right in a husband's estate, which becomes complete when as his widow she sustains her claim for it. It is not subject to the tax imposed on the estate passing from a deceased husband * * *."

The Pennsylvania Supreme Court affirmed the trial court in its opinion.

In the instant case, however, the question of whether or not the widow's exemption is a deductible claim against the estate for estate-tax purposes, is to be decided by Federal law. The United States Supreme Court stated in Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199, as follows: "The exertion of that power [to tax] is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation. * * * State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law."

Turning now to the Internal Revenue Laws of the United States, i. e., the Revenue Act of 1932, c. 209, 47 Stat. 169, Sec. 805, 26 U.S.C.A.Int.Rev.Acts, p. 643, Sec. 812, Internal Revenue Code, we find there is no express provision for deduction of the widow's exemption in computing the net estate subject to tax. The allowable deductions are stated by the act to cover: (1) funeral expenses; (2) administration expenses; (3) claims against the estate; (4) unpaid mortgages where decedent's interest in the property, undiminished by the mortgage, is included in the value of the gross estate; and (5) amounts reasonably required and reasonably expended for the support during settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction under which the estate is being administered. The plaintiffs concede the widow's exemption does not come within the category of amounts expended for support of dependents during the settlement of the estate, but aver it is an allowable claim

against the estate, and therefore deductible. We cannot so class it. This provision as to claims against the estate first appeared in Section 203(a) (1) of the Revenue Act of 1916, 39 Stat. 778. Art. 45 of Treasury Regulations 37, promulgated under the Revenue Act of 1916, provides: *"Claims against the estate.*—The amounts that may be deducted under this heading are such only as represent personal obligations of the decedent existing at the time of his death, whether then matured or not. Obligations contracted by the executor are not deductible. Only such claims as are actually enforceable against the estate may be deducted."

Similar provisions also appear in the following acts: 1918 Act, Sec. 403(a) (1), 40 Stat. 1098; 1921 Act, Section 403(a) (1), 42 Stat. 279; 1924 Act, Sec. 303(a) (1), 26 U.S.C.A.Int.Rev.Acts, p. 68; and 1926 Act, Sec. 303(a) (1), (c), 26 U.S.C.A. Int.Rev.Acts, pp. 232, 239. Article 36 of Treasury Regulations 68, and Article 36 of Treasury Regulations 70, promulgated under the respective revenue acts, all provide that claims against the estate must represent personal obligations of decedent existing at the time of his death.

The Supreme Court has held that Treasury Regulations long continued without substantial change, applying to unamended or substantially re-enacted statutes, are deemed to have received Congressional approval, and have the effect of law. See Helvering v. Wilshire Oil Co., 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. ——; Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52; Hassett v. Welch, 303 U.S. 303, 312, 58 S.Ct. 559, 82 L.Ed. 858; United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893; Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457. The widow's exemption does not represent a personal obligation of the decedent, existing at the time of his death, and therefore is not deductible under this act.

The Pennsylvania courts, in construing the widow's exemption, define it as a "Gift of law." See Hildebrand's Estate, supra. It therefore cannot represent a personal obligation of decedent existing at the time of his death.

The Commissioner therefore correctly ruled that this $500 widow's exemption could not be deducted from the gross estate in the computation of the net estate subject to tax.