## FOREIGN TRADE MANAGEMENT CO., Inc., v. UNITED STATES.

### No. 45915.

Court of Claims.
Dec. 1, 1947.

See also Ct.Cl., 74 F.Supp. 552.

Dean Hill Stanley, of Washington, D. C., for plaintiff.

Mary K. Fagan, of Washington, D. C., and Herbert A. Bergson, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and WHITAKER, HOWELL, MADDEN and LITTLETON, Judges.

WHITAKER, Judge.

Plaintiff, a corporation doing business in the United States, purchased in Portuguese East Africa some 1,460 long tons of copra for shipment to South American countries. There were no shipping routes from East Africa to South America, and so it was shipped from East Africa to New York, where it was to be unloaded and transhipped to South America. It arrived at New York on May 19, 1942. Plaintiff at once shipped it by rail to New Orleans and was preparing to load it aboard ship to fulfill contracts of sale to South American purchasers when it was requisitioned by defendant. Plaintiff sues for just compensation.

When the goods arrived in the United States there was in effect a Presidential Proclamation issued under authority of the Act of July 2, 1940, 54 Stat. 712, prohibiting the exportation of copra, among other things, without a license. No. 2465, March 4, 1941. Plaintiff, however, secured the necessary license and was preparing to load the copra on board ship when the license was revoked. This was on June 9, 1942. On July 17 and July 31, 1942, the copra was requisitioned.

Plaintiff had contracted to sell and deliver to one South American company 1,450 long tons of copra at $182 a long ton, and to another, 610 long tons at $196.36 a long ton. At the time the copra was requisitioned plaintiff was preparing to ship 840 long tons on the first contract and all of the 610 long tons on the second contract.

Plaintiff says these prices at which it had actually sold the copra establish just compensation. This would be true, if plaintiff had not been prohibited from consummating the sale. Whatever plaintiff could have gotten for the copra is a good index of just compensation. Plaintiff, however, was prevented from delivering the copra to these purchasers by the revocation of its export license. Plaintiff, therefore, was unable to get this purchase price, and, hence, it is not necessarily the basis of just compensation.

Plaintiff's license was revoked for two reasons: first, because the price at which

plaintiff had contracted to sell it greatly exceeded the value it had placed on it in its application for the license; and, second, because the consignees were reported to be on the so-called "proclaimed" list.

The licensing authorities would not permit the sales to these purchasers and at these prices. Since plaintiff could not get these prices, they do not establish just compensation.

■ On the other hand, it is not true, as defendant says, that the revocation of these licenses deprives plaintiff of the benefit of the export price, which was higher than the domestic price. Some exports of this commodity were prohibited, but not all, as was the case in Neumaticos Goodyear, S. A. v. United States, Ct.Cl., 73 F. Supp. 969. It was these particular shipments only that were prohibited. Shipments to other purchasers at different prices were not prohibited. Since plaintiff had bought the copra for export and since there was no general prohibition on its export, it is entitled to the price it could have obtained in the export trade. Swiss Confederation v. United States, 70 F.Supp. 235, 108 Ct.Cl. 388, certiorari denied Nov. 10, 1947, 68 S.Ct. 153; United States v. New River Collieries, 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014.

We must, then, determine, if we can, the export price of this commodity. In determining what this price is, we must throw out, as we have said, the sales at $182 and $196.36. It suffices to say that the Board of Economic Warfare thought these prices were too high, and would not grant export licenses for sales at such prices.

There is proof of a contract of sale of some Honduras copra at $188 a ton, but this had to be abandoned because shipping facilities could not be obtained. Since the owner of the copra did not get the $188 a ton, it cannot be said that this contract of sale is a good index of the market price.

Plaintiff also proves four contracts of sale entered into in the latter part of 1941 or early in January 1942, and it proves a contract of sale entered into in 1941 and actually consummated in March 1942. This was at $140 a ton. The contracts of sale were at prices ranging from $135 in October 1941 to $145 in November 1941 and January 1942.

Presumably, export licenses would not have been granted for shipment to at least two of these purchasers for they were said to be on the proclaimed list, but there is no proof that the prices at which the sales were to be made were too high to be approved. Certainly $140 a ton was not too high, for one sale was actually consummated at that figure.

The only proof of the export market value of copra is of sales or contracts of sale by plaintiff, with the lone exception of the contract of sale in Honduras, which was never consummated.

■ While these sales and contracts of sale would be insufficient to establish the export market price if there was any evidence to the contrary, still, in the absence of other evidence, we may accept them as a fair indication of that market. They indicate that the market shortly prior to the requisition was $145 a ton. We have found this to be the export market price.

This price allows plaintiff quite a nice profit, about 27 per cent. It is not unfair to the defendant, because two years later it issued a license for the exportation of a lot of copra for sale at nearly twice this figure, at $240 a long ton. We think $145 a long ton represents just compensation for the 1,422,223 long tons.

Plaintiff is entitled to judgment for $206,-222.34, plus compensation for delay in payment computed at 4 percent per annum from July 24, 1942, to April 28, 1943, on said amount of $206,222.34, and to compensation at the same rate on $66,303.13 from April 28, 1943, to date of payment. Against the aggregate the defendant is entitled to a credit of $139,919.21, which is the amount already paid plaintiff and the lienholders. It is so ordered.

JONES, Chief Justice, and HOWELL, MADDEN and LITTLETON, Judges, concur.