SUDAMETAL SOCIEDAD ANONIMA SUD
AMERICANA DE METALES Y MIN-
ERALES v. UNITED STATES.
No. 46104.

United States Court of Claims.
Feb. 6, 1950.

Madden, J., dissented.

Jack L. Rappaport, New York City, for
plaintiff. Harry T. Zucker, New York
City, was on the briefs.

Kendall M. Barnes, Washington, D. C.,
with whom was Assistant Attorney Gen-
eral H. G. Morison, for defendant.

Before JONES, Chief Judge, and
WHITAKER, LITTLETON, MADDEN
and HOWELL, JJ.

WHITAKER, Judge.

Plaintiff is a corporation organized un-
der the laws of the Republic of Argentina
and doing business in that country. It has
no place of business in the United States.
It sues for just compensation for some tin
requisitioned from it by defendant.

On or about November 15, 1941, plaintiff purchased from Henry Waugh & Company, Ltd., of Singapore, 45.7 metric tons of tin at an average price of 56.23 cents a pound. A portion of this tin, 54,180 pounds thereof, was loaded on the SS Lillian Luckenbach for shipment to Buenos Aires, via New York City. On account of a marine disaster this tin was unloaded at Surabaya, Dutch East Indies, and was reloaded on the SS Collingsworth, which arrived in the Port of New York on May 4, 1942.

The tin was unloaded for transshipment to Buenos Aires in another vessel. It remained on the docks from May 4 to June 2 and 3, 1942, when it was stored with Bowne-Morton Stores, Inc., in Brooklyn.

At the time of the arrival of this tin there was in effect General Preference Order M-43, which had been issued under the authority of the Act of June 28, 1940, 54 Stat. 676, as amended by the Act of May 31, 1941, 55 Stat. 236, 50 U.S.C.A. Appendix, § 1151 et seq. This order provided in part:

"(b) *Provisions as to future imports (not including tin afloat)*.—Unless otherwise specifically authorized by the Director of Priorities, no person shall:

"(1) Fabricate or convert any tin imported after the effective date of this order into the United States by him either directly or indirectly; or

"(2) Sell, transfer or otherwise dispose of any such tin (excluding tin afloat to the United States at the date of this order) except by sale thereof to the Metals Reserve Company or to any other governmental department, agency or corporation."

There was also in effect at the date of the arrival of this tin in this country regulations requiring a license for the shipment from this country of property in transit from one foreign country to another.

The validity of such a regulation was upheld in Neumaticos Goodyear, S. A. v. United States, 73 F.Supp. 969, 109 Ct.Cl. 535, certiorari denied 334 U.S. 838, 68 S. Ct. 1496, 92 L.Ed. 1763, and in other cases.

Faced with this situation, plaintiff, through two different agencies, sought to secure permission to reship this tin to Argentina, but its applications to do so were rejected on the ground that the proposed exportation would be contrary to the interests of the national defense. About ten days after the rejection of these applications the Navy Department requisitioned the tin.

Plaintiff filed a claim for just compensation in the sum of $97,191.04. This claim was allowed in the sum of $28,173.-60, plus an additional sum of $651.46 for delay in payment. The amount of $28,-173.60 was computed at 52 cents a pound, the price at which tin was being sold by the Metals Reserve Company.

■ Plaintiff claims that it is entitled to the price it could have received for this tin in Argentina. This claim cannot be sustained under prior decisions of this court. Neumaticos Goodyear, S. A. v. United States, supra. The regulations forbidding its transshipment were a valid exercise of the war powers of this country. Because of them, plaintiff was unable to deliver the tin to Argentina and, therefore, of course it was not entitled to the price it could have received for it in that country.

■ Regulations prohibiting its transshipment were issued pursuant to the sovereign powers of this country and plaintiff is not entitled to recover any damages it may have suffered in consequence thereof. Horowitz v. United States, 267 U.S. 458, 45 S.Ct. 344, 69 L.Ed. 736; Omnia Commercial Co., Inc., v. United States, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773; Neumaticos Goodyear, S. A. v. United States, supra, and other cases there cited.

■ Plaintiff says that we have held that where merchandise is purchased for export that the exporter is entitled to the export price, relying on United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014, and our decisions in Swiss Confederation v. United States, 70 F.Supp. 235, 108 Ct.Cl. 388, certiorari denied 332 U.S. 815, 68 S.Ct. 153,

92 L.Ed. 392; Foreign Trade Management Company v. United States, 74 F.Supp. 550, 110 Ct.Cl. 23, certiorari denied 334 U.S. 831, 832, 68 S.Ct. 1344, 1345, 92 L. Ed. 1758, and other cases. It is entitled to the export price, but this means the price being paid in this country for goods to be exported, and not the price which could have been secured in the country of its destination. Just compensation is to be determined as of the time and place of the taking. United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; United States v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390. The place of the taking was New York City.

Nor is it shown that the export price was any higher than the domestic price, except that Revised Price Schedule No. 17 of the Office of Price Administration allowed an addition to the domestic price of 1 cent per pound for the sales for export of tin in the quantity which plaintiff had for export.

The Metals Reserve Company had established a ceiling price of 52 cents a pound for tin of the same grade as plaintiff's tin, and during the year 1942 it sold approximately 16,000 tons of tin at this price, and it was in position to supply tin to every holder of a priority or allocation for tin from the War Production Board. Defendant says that this determines the limit of the amount the plaintiff is entitled to recover. The payment made to it was on this basis.

In Neumaticos Goodyear, S. A. v. United States, supra, and in Fabrica Uruguaya de Neumaticos, S. A. v. United States, 114 Ct.Cl. 76, 84 F.Supp. 745, we rejected the Government's contention that plaintiff was entitled to recover no more than the price at which the Rubber Reserve was selling rubber to consumers in this country.

The Commissioner has found that 54.79 cents a pound is just compensation. He bases this on the fact that the Metals Reserve Company contracted to pay this sum for tin which it purchased in the Belgian Congo at just about the same time plaintiff's tin was requisitioned. It had purchased it at this price c. i. f. New York.

■ We are of the opinion that this is the best measure of just compensation. Plaintiff would have been able to secure this sum for its tin if it had been permitted to sell it. As we have said many times before, the Government had the undoubted right to prohibit plaintiff from selling its tin at any price greater than that fixed, but it did not have the right to place this limit upon the amount it was required to pay plaintiff when it requisitioned its property. Under the Constitution plaintiff is entitled to just compensation, and neither Congress nor an administrative agency has the right to say in advance of a requisition that so much and no more shall be paid to a person whose property is taken, unless this amount justly compensates the owner for the taking of it. The sum that does justly compensate the owner is a matter for judicial determination. Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463; United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014; Davis v. Newton Coal Co., 267 U.S. 292, 301, 45 S.Ct. 305, 69 L.Ed. 617.

The Supreme Court of Pennsylvania in Newton Coal Co. v. Davis, 281 Pa. 74, 126 A. 192, 196, which was affirmed by the Supreme Court in Davis v. Newton Coal Co., 267 U.S. 292, 45 S.Ct. 305, 69 L.Ed. 617, quoting from National City Bank v. United States, D.C., 275 F. 855, 860, expressed the rule succinctly: "The government, as a war measure under the exercise of governmental powers, may fix prices, either directly or by governmental regulations necessarily reducing the prices; but this does not authorize it to acquire the property *in invitum* at such reduced prices."

The Government had to pay 54.79 cents a pound for tin which it purchased at just about the time of the requisition. If it had to pay so much in the open market, it seems only just that it should pay plain-

tiff an equal amount when it takes its property against its will.

Just compensation for the 54,180 pounds of tin requisitioned amounts, at this price, to $29,685.22. To this amount there is to be added an amount to compensate plaintiff for the delay in payment, computed at 4 percent per annum from September 10, 1942, the date of the taking, to June 10, 1943. No amount has been computed for delay in payment from June 10, 1943, to May 2, 1944, the date of a partial payment, because the delay between these dates was plaintiff's fault. On May 2, 1944, plaintiff was paid the sum of $14,412.53. This amount is to be deducted from the amount found above, and on the balance, $15,272.69, the plaintiff is entitled to an additional sum computed at 4 percent per annum from May 2, 1944, to the date of payment. Judgment will be entered accordingly.

HOWELL and LITTLETON, JJ., and JONES, Chief Judge, concur.

MADDEN, Judge, dissenting.

I dissent for the reasons given in my dissenting opinion in the Commodities Trading Corporation case (Commodities Trading Corp. v. United States), 83 F.Supp. 356, 113 Ct.Cl. 244.