### CORS v. UNITED STATES.

No. 46796.

Court of Claims.

Jan. 5, 1948.

236

Frank C. Mason, of New York City (Harold A. Kertz and Charles B. McInnis, both of Washington, D. C., Mahar & Mason, of New York City, and Roberts & McInnis, of Washington, D. C., on the brief), for plaintiff.

Edgar T. Fell, of Baltimore, Md., and Herbert A. Bergson, Asst. Atty. Gen. (John B. Miller, of Washington, D. C., on the brief), for defendant.

William M. Aiken, of Washington, D. C. (John G. Laylin, Edward G. Howard, of New York City, and Covington, Burling, Rublee, Acheson & Shorb, of Washington, D. C., on the brief), amici curiæ.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

WHITAKER, Judge.

On October 15, 1942, defendant requisitioned plaintiff's steamship MacArthur. The War Shipping Administration determined that $9,000 was just compensation. Upon plaintiff's rejection of this award there was paid to him the sum of $6,750, being 75 per cent of the amount of the award as required by the Merchant Marine

Act of 1936, as amended, § 902, 53 Stat. 1254, 1255, 46 U.S.C.A. § 1242. He sues for what he says is just compensation.

The vessel was built in 1895 for the Coast Guard, and was operated by it until about March 19, 1942, when it was sold to the highest bidder for $2,875. Plaintiff, the purchaser, spent $5,699.78 on repairing it, doing much of the work himself at a considerable saving in cost.

After the vessel had been reconditioned, and a license for its operation had been secured on April 21, 1942, it was removed to New York City, where it was moored until it was requisitioned by the defendant on October 15, 1942.

The commissioner has found that $15,500 was its fair market value at the time of the taking. Plaintiff does not acquiesce in this, but we do not think a higher value can be justified. This, we think, represents its fair market value. It is almost twice as much as plaintiff's investment in the vessel.

Defendant admits that the boat could have been sold on the market for this amount, but it admits liability for only $10,500, because it says that $5,000 of the market value of the vessel was due to an enhancement in market value brought about by the Government's need for vessels which necessitated their taking. The defendant claims that the amount of such enhancement in value should be deducted from the fair market value of the vessel in determining just compensation. This is the principal issue in the case. In determining it, we have been much assisted not only by the briefs of the parties but also by a brief filed by Covington, Burling, Rublee, Acheson & Shorb as amicus curiæ.

We have found that the increase in the market value of this vessel was due, first, to the great increase in shipping and harbor traffic due to the war and, second, to the Government's need for vessels in the prosecution of the war, which necessitated the requisitioning of many of them.

It is not possible to allocate to the second cause a definite part of the increase in market value, but even if it were possible to do so, we do not think the defendant is entitled to a deduction from market value on this account. We do not think the Government should pay a property owner less than he could have secured for his property from someone else. If an owner has a vessel and there are people who are willing to pay him $15,500 for it, and he wants to sell it at this price, but the Government intervenes and takes his vessel, it is not just, ordinarily at least, that the Government should pay him for it any lesser amount. Except in rare circumstances, he has not been justly compensated for his property unless he secures from the condemner what he could have secured from others.

■ Fair market price, where there is a free market, has ever been the usual standard of just compensation. Boom Co. v. Patterson, 98 U.S. 403, 407, 25 L.Ed. 206; Monongahela Nav. Co. v. United States, 148 U.S. 312, 327, 13 S.Ct. 622, 37 L.Ed. 463; United States v. Chandler–Dunbar Water Power Co., 229 U.S. 53, 80, 81, 33 S.Ct. 667, 57 L.Ed. 1063; Seaboard Air Line Ry. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; Vogelstein v. United States, 262 U.S. 337, 43 S.Ct. 564, 67 L. Ed. 1012; United States v. New River Collieries, 262 U.S. 341, 43 S.Ct. 565, 67 L. Ed. 1014; Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Miller, 317 U.S. 369, 374, 63 S. Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

Defendant says, however, that this rule does not apply where the Government is forced by the necessities of war to condemn property. In support of this statement it relies particularly on United States v. Miller, supra, and on Rule 4 laid down by the President's Advisory Board on Just Compensation, consisting of Judges Learned Hand, John J. Parker and Joseph C. Hutcheson, and also on section 902(a) of the Merchant Marine Act of 1936, as amended, 53 Stat. 1254, 1255.

■ We do not think the case of United States v. Miller, supra, supports defendant's position. That case reiterates the holding of the Supreme Court in Kerr v. South Park Com'rs, 117 U.S. 379, 6 S.Ct. 801, 29 L.Ed. 924, and Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170, to wit, that a condemner is not liable for any increase in value due to its initiation of

a project necessitating the taking of the property condemned. This rule is designed to prevent the owner from profiting from an increase in market value due to speculation as to the amount the condemner might be compelled to pay for the property. The Supreme Court in United States v. Miller, 317 U.S. at page 377, 63 S.Ct. at page 282, 87 L.Ed. 336, 147 A.L.R. 55, thus stated the reason for the rule:

" * * * If their lands were probably to be taken for public use, in order to complete the project in its entirety, any increase in value due to that fact could only arise from speculation by them, or by possible purchasers from them, as to what the Government would be compelled to pay as compensation."

This rule, however, is limited to property lying within the scope of the project. If a parcel of land, not within the limits of the original project, gained in value by reason of its proximity to the public improvement, and if later it was decided to enlarge the project and to condemn this additional land, the increase in value due to its proximity to the project is not to be excluded in determining just compensation. This is because its increase in market value was not due to speculation as to what the owner might be able to compel the Government to pay for it, but to a natural increase in the value of the property on account of its environment, apart from any prospect of its condemnation by the Government.

In short, before any part of the market value of a piece of property is to be eliminated, it must appear that it was brought about by the prospect of its condemnation by the Government. So, for the case at bar to come within the rule of the Miller case, it would have to appear that it was known that the defendant had entered upon a project that would probably result in the condemnation of plaintiff's vessel, and that this fact had caused the increase in market value. The outbreak of war alone and the resulting need of the Government for vessels generally do not bring the case within the rule. In addition it would have to appear, at the least, that it was the known program of the Government to condemn all vessels similar to plaintiff's vessel.

The proof falls far short of this. Many vessels similar to plaintiff's were left in private hands, and it was known they would be. Indeed, the Government itself had disposed of this very vessel seven months before. This was ten months after the outbreak of hostilities. There seemed to be no prospect of its being requisitioned. It is only the enhancement in value due to speculation on account of the imminent prospect of requisition that is to be eliminated.

So much for the Miller case. The rules formulated for the guidance of the War Shipping Administration by the eminent jurists composing the President's Advisory Board on Just Compensation are entitled to great respect; but it must be remembered that these rules were promulgated for the guidance of an administrative body administering the Merchant Marine Act of 1936. That Act provided that "in no case shall the value of the property taken or used be deemed enhanced by the causes necessitating the taking or use." In formulating rules for the guidance of an administrative body administering this Act this Committee, of course, could not run counter to this provision of the Act, and so in Rule 4 it was provided, in part, that "from the value at the time of taking there should be deducted any enhancement due to the Government's need of vessels which has necessitated the taking * * *."

It is a recognized principle of the law of eminent domain that in determining market value there should be eliminated any special value incident to an owner's unwillingness to sell his land because of its special adaptability to his own use, and a taker's special need for the land because of its particular fitness for the taker's purposes. United States v. Miller, supra, 317 U.S. at page 375, 63 S.Ct. at page 280, 89 L.Ed. 336, 147 A.L.R. 55. If the rule laid down by the Advisory Board be so limited, it is a correct statement of the law; but if it be interpreted to mean that the Government is not required to pay as much for property condemned as others were willing to pay for it for their own use, then it is not a correct statement of the law. If the owner could have sold the vessel to private parties for their own use for $15,500, certainly he is entitled to no less from the

Government when it prevents him from making the sale by taking his property away from him.

■ We take it that the rule means no more than that any increment in value due to an owner's unwillingness to sell and the Government's special need were to be eliminated. If it means more than this, it cannot be followed by the courts in fixing just compensation.

■ The elimination of enhancement in value due to previous takings of similar vessels or to the probable prospective taking of the particular vessel must be interpreted in the light of the rule reiterated in United States v. Miller, supra, which we have heretofore discussed. This means that if the taking of this vessel was within the reasonably probable scope of a program for the condemnation of vessels, known to have been initiated by the defendant, any increase in value incident to speculation as to what the Government might be required to pay is to be eliminated. That it was within the scope of the program might be evidenced by the taking of similar vessels or anything else that might show that the taking of this vessel was reasonably probable. An increase in value due to this prospect of condemnation is to be eliminated. But the proof shows that the condemnation of this vessel was not within any program adopted by the Government. There was no reasonable prospect of its condemnation. All indications were that the Government did not want this vessel.

■ We understand defendant to say in argument that the Merchant Marine Act of 1936, limiting the amount to be paid when vessels were requisitioned, was a direction to the administrative agency, and that it was not binding on the courts when they are called upon to fix just compensation. It has been held that the determination of just compensation is a "judicial function, and [that] no power exists in any other department of the Government to declare what the compensation shall be or to prescribe any binding rule in that regard." United States v. New River Collieries, 262 U.S. 341, 343, 344, 43 S.Ct. 565, 567, 67 L.Ed. 1014, citing Monongahela Nav. Co. v. United States, 148 U.S. 312, 327, 13 S.Ct. 622, 37 L.Ed. 463. We assume the Act was passed with this longstanding limitation in mind and that it was not intended to lay down a rule binding on us.

■ We are of opinion that neither United States v. Miller, supra, the rules of the President's Advisory Board on Just Compensation, nor the Merchant Marine Act of 1936 require us to abandon or to modify in this case the standard of market value laid down by the Supreme Court in the cases cited supra. Since plaintiff could have gotten for his vessel $15,500 from private persons for their own use, he is entitled to no less from the Government.

Plaintiff is entitled to recover $15,500, plus compensation for delay in payment, computed at four per cent per annum on this amount from October 15, 1942, until August 21, 1944, and on $8,750 from August 21, 1944, to date of payment. Against the aggregate the defendant is entitled to a credit of the amount already paid by it of $6,750. Judgment for this amount will be entered. It is so ordered.