## AMERICAN–HAWAIIAN STEAMSHIP CO. v. UNITED STATES.

### THE ALASKAN.

No. 236, Docket 21486.

United States Court of Appeals
Second Circuit.

Argued May 8, 1951.

Decided Aug. 13, 1951.

Newell Clapp, Acting Asst. Atty. Gen., Irving H. Saypol, U. S. Atty., New York City, Leavenworth Colby, Special Asst. to the Atty. Gen. (Paul D. Page, Jr., Sol., Washington, D. C., and Joseph A. Klausner, Atty., Maritime Administration, New York City, of counsel), for appellant.

Kirlin, Campbell & Keating, New York City (Clement C. Rinehart, New York City, of counsel), for appellee.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and CLARK, Circuit Judges.

SWAN, Chief Judge.

This is a suit on a policy of war risk insurance covering the libellant's steamship Alaskan which was requisitioned in May 1942 and was subsequently insured by the War Shipping Administration. The vessel was torpedoed and sunk on November 28, 1942. The War Shipping Administration determined "just compensation" for the vessel to be $776,003. This sum being deemed unsatisfactory by the libellant, it elected to receive 75 per cent. thereof and to sue for an additional amount, as permitted by the Merchant Marine Act of 1936, as amended, 46 U.S.C.A. § 1242(d). The libel was filed November 27, 1944, claiming $1,035,000 with interest, less credits for the sums received under the War Shipping Administration's valuation. The case was tried before George W. Alger as Commissioner. He submitted a detailed report, finding "just compensation" for loss of the Alaskan to be $983,250. His report was thoroughly reviewed by Judge Leibell and was approved as correct, except as to the calculation of interest. 85 F.Supp. 815. From the final decree entered March 4, 1949, the United States appealed on the ground that the award was too large, and the libellant filed cross-assignments of error on the ground that it was too small. After the appeal was taken, the decision in United States v. Cors, 337 U.S. 325, 69 S.Ct. 1086, 93 L.Ed. 1392, was handed down, construing the so-called enhancement clause of section 902(a) of the Act, 46 U.S.C.A. § 1242(a).[1] There-

---

1. This section authorizes the requisition of vessels, and provides that "the owner thereof shall be paid just compensation for the property taken or for the use of

after on January 30, 1950, the appellant moved in this court for an order remanding the cause for the taking of evidence and the making of findings alleged to be required under the Cors decision. We denied the motion with leave to the District Court to hear it. After a most thorough and careful consideration, Judge Leibell denied the motion.[2] The appellant then moved in this court for leave to amend its notice of appeal and to incorporate in the record on appeal the proceedings upon the motion to take additional evidence. We granted leave to incorporate portions of the motion proceedings in the District Court and postponed to the argument of the appeal further consideration of the motion before us.

■ Most of the appellant's brief is devoted to argument that the court erred in denying the Government's motion to take further proof with respect to elements of enhancement under the rule of United States v. Cors.[3] This order, if reviewable on appeal, can be reversed only for an abuse of discretion. We find none. For reasons fully stated by Judge Leibell, we do not think that the Cors case made any such change in law applied by the District Court as to constitute a "supervening decision."[4] Furthermore, the evidence sought to be introduced was as available to the Government during the trial as it was upon the motion. No reason is apparent to us why the Government should not be treated like any private litigant in applying the rule that available evidence, if it is to be used, must be brought forward at the trial.[5] We are content to affirm denial of the motion to reopen the case on the opinion below, 92 F. Supp. 785.

■ The Commissioner in large part based his valuation of $983,250, which is at the rate of $95 per deadweight ton, on the market value of comparable vessels in 1941. The appellant contends that the 1941 market value includes forbidden enhancement due to the Government's need; but the evidence by which this is sought to be established is solely that which was presented upon the motion and which we have just held was properly excluded. Of the record made before the Commissioner, Judge Leibell said, 85 F.Supp. at page 824: "The Commissioner gave due consideration to Rules 1, 3 and 4 of the Advisory Board on Just Compensation * * *. His report shows that 'enhancement' due to a general rise in prices or earnings was not deducted from the value at the time of taking, but that any enhancement due to the Government's need was deducted." We see nothing to justify reversal of this conclusion as "clearly erroneous."

The Commissioner's valuation is also attacked on the ground (1) that it fails to give effect to the Government's restrictive controls which the Commissioner found had depressed 1942 values below 1941 levels; (2) that it was error to consider reconstruction cost and fail to give adequate effect to the vessel's depreciation from age in determining her value; and (3) that it was error to choose June 12, 1942 (the vessel's delivery date under time charter requisition) rather than November 28, 1942 (the date of her loss) as the date as of which she should be valued, although the Commissioner found her value on both dates to have been the same. All of these points were satisfactorily considered in Judge Leibell's first opinion.[6] We see no occasion to add to that opinion. Nor do we find it necessary to discuss the appellee's contentions that the award should be increased and interest allowed from the date of the vessel's loss rather than from the date the libel was filed.[7] Accordingly both the final decree

---

such property, but in no case shall the value of the property taken or used be deemed enhanced by the causes necessitating the taking or use."

2. His opinion is reported in 92 F.Supp. 785 and his reasons are summed up in the final paragraph at page 794.

3. 337 U.S. 325, 69 S.Ct. 1086, 93 L.Ed. 1392.

4. See 337 U.S. 325, at pages 332, 333, 69 S.Ct. 1086, 93 L.Ed. 1392.

5. See United States v. Bransen, 9 Cir., 142 F.2d 232, 234, 235.

6. 85 F.Supp. 815.

7. As to interest, see Act of December 13, 1950, Public L. 877, 81st Congress, amending sec. 5 of the Suits in Admiralty Act, 46 U.S.C.A. § 745.

and the order declining to take further proofs are affirmed on the opinions below, with costs.

CLARK, Circuit Judge (dissenting).

Beginning in 1916, in the lengthening shadow of World War I, the Congress followed widespread popular demand to attempt to devise means of "taking the profit out of war," believing that in a time of universal sacrifice a few should not profit immeasurably. That movement has taken many turns and courses; clearly it has not yet exhausted itself. As affects our present issue, it reached its climax in the "enhancement clause" first proposed in 1922, adopted with respect to government-aided ships in 1928, and given its present scope as an amendment to the Merchant Marine Act in 1936. By this the owner of a requisitioned vessel is to be paid "just compensation" for the property taken or used, "but in no case shall the value of the property taken or used be deemed enhanced by the causes necessitating the taking or use." § 902(a), 46 U.S.C.A. § 1242 (a). The important and extensive legislative history behind all this is set forth in the appendix to respondent's brief. Because it may there be found, because, too, it is so wholly one way as a search for ways and means of accomplishing a clear and agreed-upon objective, I shall forbear to rehearse it here. But some stress upon that cherished objective is still justified because of the importance it has assumed in the legislative purpose—and still assumes, as is shown by the restrictions set upon the disbursement of funds for vessels in the Appropriation Act of June 2, 1951.[1] How spectacularly that objective has failed of accomplishment in this instance is shown by a bare recital of facts beyond dispute.

The vessel here to be valued, the Alaskan, was built in 1918 and hence was 24 years old at the time of its sinking, November 28, 1942. According to the testimony it was of an antiquated and obsolete design. Libelant had bought it from the Shipping Board in 1928, paying about $289,100, and then added reconditioning to bring its cost up to $526,-519.59. As the parties themselves stipulated, its value on September 8, 1939, was $450,000. The Commissioner rejected 1942 values—in part because he considered them unrepresentatively *low*—and found a 1941 value of $983,250, which is now affirmed. Hence in this short period, which covered, however, our government's great defensive efforts, including the lend-lease program of aid to the Allies and its accompanying tremendous demand for shipping, this old vessel more than doubled in value.[2] The figures themselves, against this background, belie the conclusion that all enhancement of value due to the Government's need for shipping (the cause necessitating the requisition here) has been rigorously squeezed out. Actually, as his report makes quite clear, the Commissioner made no use of the enhancement clause whatsoever to keep values down; he did use it, at least fleetingly, to support an *increase* in value over the 1942 lower point.

Before I turn to matters of detail I think it only fair to point out that a legislative policy so firmly bottomed on public demand would not have been so demonstrably frustrated for light and inconsequential reasons. There have been substantial and, to a considerable extent, well founded doubts as to the validity of any legislation seeming to limit the constitutional concept of just compensation for a governmental taking below the fair value of the property at the taking. These led to a diversity of response to the legislation within the various agencies of the Government itself, with a basic split between the General Accounting Office and the War Shipping Administration and its

1. Pub.L.No.45, 82d Cong., 1st Sess., c. 121, H.R. 3587, Third Supplemental Appropriation Act 1951, c. VIII, p. 8, U.S. Code Cong.Serv.1951, p. 975, providing that no money made available to the Department of Commerce for Maritime Activities shall be used in payment for a vessel requisitioned, or lost while insured, by the Government unless the price to be paid "is computed in accordance with subsection 902(a) of said Act, as that subsection is interpreted by the General Accounting Office."

2. The increase is graphically shown in terms of deadweight ton—$50 cost in 1928, $44 value at the beginning of World War II in 1939, and $95 for a value as of late 1942.

Administrator. The former took the position that all enhancement of value, other than that resting on economic improvement in general conditions, occurring after the President's proclamation of limited national emergency on September 8, 1939, should be disallowed. The latter, entertaining serious doubts of the validity of the legislation, recommended settlements based on rises in value due to the wartime demand for ships. The appointment and reports of two Advisory Boards on Just Compensation, set up by the President, did not settle the matter and the decision of the Court of Claims in Cors v. United States, 75 F.Supp. 235, 110 Ct.Cl. 66, gave direct support to the fears and conclusions of the Shipping Administration. Not until the reversal of this decision in June, 1949, in United States v. Cors, 337 U.S. 325, 69 S.Ct. 1086, 93 L.Ed. 1392, upholding the enhancement clause, did that enactment have clear support and a chance of operation within the Government or without. The initial decisions below, rendered before the Supreme Court spoke, were clearly a reflection of the earlier philosophy. The fundamental error here, as I see it, is an unwillingness to respond to the governing law as now interpreted. The result in its repudiation of the enhancement clause can be justified only in terms of the earlier response to the constitutional precept; I believe clarity of thought would be advanced by emphasizing that, instead of merely procedural barriers which should melt away once the substantive law is settled.

It is permissible, I presume, to believe that the Cors case is not the last word upon this subject. There was sharp dissent there, although, as I read it, not going so far as the majority result here. More troublesome is the ground of decision that "We need not reach the question whether the measure of compensation which Congress wrote into the Act is in all of its applications identical with the judicial standard. We are satisfied that on the present facts the two are coterminous." 337 U.S. at page 331, 69 S.Ct. at page 1090, 93 L.Ed. 1392. This ground, which has been vigorously assailed by commentators, see 48 Mich. L.Rev. 226 and cf. Braucher, Requisition At A Ceiling Price, 64 Harv. L.Rev. 1103, 1123, has been taken by the judge below and my brethren here as showing an affirmance of existing law preventing this from being regarded as a "supervening decision" requiring re-examination of a determination previously reached. As I emphasize later, this latter conclusion, whatever its technical and theoretical basis, is about as far from the practical realities of violent dispute, even within the Government itself, as is imaginable. But for my part, I am ready to apply the Supreme Court decision as written; further, it seems to me that later decisions, too, show a determination to follow the same fundamental principle of restricting gain from governmental need in time of crisis. Thus United States v. Commodities Trading Corp., 339 U.S. 121, 70 S. Ct. 547, 94 L.Ed. 707—clarifying United States v. John J. Felin & Co., 334 U.S. 624, 68 S.Ct. 1238, 92 L.Ed. 1614, and reversing 83 F.Supp. 356, 113 Ct.Cl. 244—held that just compensation for a quantity of whole black pepper requisitioned by the War Department in 1944 should be limited to the ceiling price established by the Office of Price Administration under authority of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 901 et seq. See Braucher, supra.

Since, therefore, it is so clearly the Cors decision which marks a turning point and requires a new orientation in this case, I think the essentially fair approach would have been the reopening of the case, as requested by the respondent's motion. In the light of this background I have little inclination to criticize either the Commissioner or the district court for then looking at the statute as were other courts and government agencies. But that does not excuse a failure to make correction once the law is authoritatively announced. One can sympathize with the reluctance of the district judge to overturn some years of diligent effort by the parties, Commissioner, and court—all on a matter so nebulous as "fair value" customarily is. Even so, a direct mandate of the law cannot be violated. In his painstaking and laborious decision, D.C. S.D.N.Y., 92 F.Supp. 785, the judge does not really negate the point that the enhance-

ment clause was used only contrary to its purpose—to increase, rather than to hold down, values. Further, using evidence which does not appear to have been fully before him, he found various admissions of governmental representatives, which, if usable for any purpose, show not a legal basis for allowing enhanced values, but a wide misunderstanding of the law which now requires clarification and correction. That so careful and generally persuasive a judge found it thus difficult to justify so rigidly technical a position suggests, I feel, its fundamental weakness. My brethren, faced with the dilemma presented by the Commissioner's treatment of the enhancement clause, resolve it by not discussing it. They do hold that the Cors decision did not make "any such change in law" as to constitute a "supervening decision," which, I submit with deference, is a legal generality having neither validity nor meaning with reference to the concrete facts of this case and its earlier presentation and adjudication below. They suggest further a desire to treat the Government as any private litigant. I venture to believe that with the modern de-emphasis upon mere procedure any private litigant caught in the toils of conflicting legal principles would now · be readily allowed the benefit of a settlement of the law made before the decision became final by appellate review. And this is without resort to the well settled principle that officers of government have no authority to estop it.

Hence I feel that there was a manifest abuse of discretion in the refusal to reopen the case and accept new evidence in the light of the now-declared law. But even if this is not done, the Commissioner's original finding must be tested by the law; and by

that it cannot stand. The Commissioner's fundamental error was in ignoring the enhancement clause for the very purpose for which it was most directly applicable, the vast increase in value during and due to the defense efforts of 1939–1941.[3] Following this same general conception he rejected 1942 values, assigning as reasons both the few ship sales before him and the governmental restrictions on shipping which had depressed ship values. And he read the enhancement clause in his one direct reference to it[4] as preventing such an effect—a conclusion we now see to be erroneous generally as well as specifically with respect to ships. Under the law he was required to find a 1942 value giving effect to the depressive elements, whatever they were. He then needed to make a definite finding as to enhancement of value in the statutory sense and the amount thereof as required in the Cors case. Finally he was required to deduct this amount from his finding of 1942 value and then award the balance. Of course none of this did he actually do.

This, then, was the major error in the award as made. In my judgment there were also minor errors in addition; the considerable reliance on reconstruction cost depreciated in view of the unreasonableness of reproducing this obsolete boat; the allowance of a depreciation rate of only 3.75 per cent per annum on diminishing balances; the acceptance of the date of requisition, June 12, 1942, rather than November 28, 1942, as the date of valuation. I shall not discuss these in detail, but simply say that reversal seems to me imperative both for the achieving of a fair and legal result here and for the elimination of a precedent dangerous in its far-reaching implications.

3. In the Cors decision the Court accepted the rules defined by the Advisory Board on Just Compensation. But the Board did not regard its conclusions as essentially different from those of the Comptroller General and the General Accounting Office. On deducting enhancement from 1939 through 1941 they were in complete accord. And in general the consequences should be the same; the Comptroller General took merely 1939

values and added increases due strictly to economic improvement in general conditions, while the Board started with value at time of taking and deducted the improper elements of enhanced value.

4. He does quote elsewhere, and without direct application, Rule 4 of the first Advisory Board on Just Compensation, which is built upon the statutory provision, although without specific citation.