JONES, Chief Judge and LARAMORE, MADDEN and LITTLETON, JJ., concur.

**AMERICAN–HAWAIIAN STEAMSHIP COMPANY, as owner of the American Steamship Hawaiian,**

v.

**THE UNITED STATES.**

No. 48758.

United States Court of Claims.

Oct. 5, 1954.

Clement C. Rinehart, New York City, for plaintiff. Carl H. Watson, Jr., and Kirlin, Campbell & Keating, New York City, were on the briefs.

J. Frank Staley, Washington, D. C., with whom was Asst. Atty. Gen. Warren E. Burger, for defendant. William A. Mellan, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

WHITAKER, Judge.

The issue presented in this case is the just compensation to which the plaintiff is entitled for the taking by defendant, under a bareboat charter, of the possession and use of the American steamship *Hawaiian* during the period from July 7, 1943, to May 1, 1946.

Plaintiff says that it is entitled to a rate of $6.00 per deadweight ton per month throughout the requisitioned period, less the amounts already paid by defendant on account, plus interest, as a part of just compensation, at the rate of 4 percent per annum on each monthly installment beginning August 1, 1943, and continuing to the date of payment of the judgment herein, subject to certain adjustments.

Defendant says that the "bareboat requisition rate" should not exceed that fixed by the War Shipping Administration, which was $1.25 per deadweight ton per month, plus appropriate allowances for the *Hawaiian's* deadweight tonnage and speed.

The *Hawaiian* was a steam freighter built in 1919, of 9,460 deadweight tons, and with a speed in excess of 12 knots. Her particulars are further described in finding 4.

On July 7, 1943, the War Shipping Administration, acting pursuant to section 902(a) of the Merchant Marine Act of 1936, 49 Stat. 2015, as amended, 46 U.S.C.A. § 1242, requisitioned the *Hawaiian* on a "bareboat" basis. It retained possession and use of the vessel until it was redelivered to plaintiff on May 1, 1946.

On July 31, 1944, approximately a year after the requisition, the War Shipping Administration tendered plaintiff a bareboat form of charter party for the *Hawaiian* containing, *inter alia*, an offer of hire at the rate of $12,108.80 per calendar month. This was at the rate provid-

ed by War Shipping Administration General Order No. 37, issued April 7, 1944, which fixed a basic rate of bareboat charter hire for dry cargo vessels built during the period 1914–1934 at $1.25 per deadweight ton per month, plus certain allowances per vessels having speeds equal to or in excess of 10½ knots. The hire tendered for the *Hawaiian* was at the rate of $1.28 per deadweight ton per month, the sum of the basic rate established by General Order No. 37, plus an additional 3 cents allowed for vessels with speeds exceeding 10½ but less than 12 knots. As the *Hawaiian's* speed exceeded 12 knots, she was entitled under General Order No. 37 to 6 cents, instead of 3 cents, in addition to the basic rate of $1.25 per deadweight ton per month.

On August 24, 1944, plaintiff declined to accept either the form of charter or the rate of hire offered. As required by section 902(d) of the Merchant Marine Act of 1936, supra, defendant made monthly payments to plaintiff, between March 24, 1944, and August 16, 1946, aggregating $307,079.74 for the use of the *Hawaiian*. The aggregate amount of these payments on account is equivalent to hire at the rate of 96 cents per deadweight ton per month for the bareboat requisition period, or 75 per cent of hire at the rate of $1.28 per deadweight ton per month.

Plaintiff sues to recover hire at the rate of $6.00 per deadweight ton per month, less the amount already received by plaintiff on account, or net compensation of $5.04 per deadweight ton per month for the bareboat requisition period of 33 months, 25 days, 5 hours, and 10 minutes, plus interest as a part of just compensation for defendant's delay in payment.

In determining what is just compensation, each case must be decided upon its individual facts, although the courts are guided to their conclusions by certain broad principles, well known, often quoted, and often difficult of application in specific instances. Dore v. United States, 97 F.Supp. 239, 119 Ct.Cl. 560, 581. Just compensation has been defined as "the sum which, considering all the circumstances—uncertainties of the war and the rest—* * * would in all probability result from fair negotiations between an owner who is willing to sell and a purchaser who desires to buy." Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 123–124, 44 S.Ct. 471, 475, 68 L.Ed. 934; Olson v. United States, 292 U.S. 246, 257, 54 S.Ct. 704, 78 L.Ed. 1236. This is but another way of saying that fair market value, where there is a free market, is the usual standard of just compensation. United States v. Commodities Trading Corp., 339 U.S. 121, 123, 70 S.Ct. 547, 94 L.Ed. 707; Olson v. United States, supra, 292 U.S. at page 255, 54 S.Ct. at page 708; Monongahela Navigation Co. v. United States, 148 U.S. 312, 326, 13 S.Ct. 622, 37 L.Ed. 463; Boom Co. v. Patterson, 8 Otto 403, 98 U.S. 403, 407, 25 L.Ed. 206. Where, for any reason, property has no market, resort must be had to other data to ascertain its value, although this "involves the use of assumptions, which make it unlikely that the appraisal will reflect true value with nicety." United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336. The ascertainment of value is not controlled by rigid rules or artificial formulae; what is required is a "reasonable judgment having its basis in a proper consideration of all relevant facts. Minnesota Rate Cases [Simpson v. Shepard], 230 U.S. 352, 434, 33 S.Ct. 729, 57 L.Ed. 1511. Standard Oil Co. of New Jersey v. Southern Pacific Co., 268 U.S. 146, 156, 45 S.Ct. 465, 467, 69 L. Ed. 890.

There was no free market for the use of large, oceangoing, American-flag freighters such as the *Hawaiian* at the time of her taking on bareboat basis on July 7, 1943. In April 1942, the use of all such privately owned vessels had been requisitioned on time charter basis by the War Shipping Administration. From that time, if not before, there was no free market for the use of the *Hawaiian*. The court must, therefore, base its determination on other data, even though the inquiry may involve what is

"at best, a guess by informed persons." United States v. Miller, supra, 317 U.S. at page 375, 63 S.Ct. at page 280, 87 L. Ed. 336.

The requirement of the Constitution is that the Government must pay for property it takes a compensation which is "just." By that is meant, of course, what is just to the owner and to the Government. Justice is no absolute term. It frequently requires give and take. For one to demand all that the law allows may do injustice to the other. Shylock, in Shakespeare's Merchant of Venice, was entitled under the law to his pound of flesh, but, as we see it today, it would have been an injustice for him to have taken it. Justice is a nice balance of the equities.

This was not so under the old common law of England; but equity intervened to ameliorate the rigors of the law. When our Constitution was adopted, and today, justice means the law tempered by the principles of equity.

Plaintiff says that the level of earnings realized by owners from the use of freighters such as the *Hawaiian* from the carriage of commercial cargo some months prior to the general requisitioning in April 1942 could have been realized by plaintiff throughout the bareboat requisition period if the *Hawaiian* had not been taken by defendant, but had remained in plaintiff's possession and control.

This is unrealistic. The country was at war. Various and sundry controls had been established that affected the use of plaintiff's vessel. Controls authorized by statute are necessary for the defense of the nation and are lawful, unless they are in conflict with the Constitution. Conditions when the boat was requisitioned were radically different from those existing before the war. What the boat earned before the war is no measure of what she could have earned during the war.

Just compensation for the use of the *Hawaiian* is not to be measured by the value of her use before the market was "interfered with" by the Government, as plaintiff says. In arriving at the amount which probably would have resulted from fair negotiations between an owner willing to let, and a charterer desiring to hire the *Hawaiian*, lawful governmental regulations, restrictions, and controls cannot be ignored. American-Hawaiian Steamship Co. v. United States, D.C., 85 F.Supp. 815, affirmed 2 Cir., 191 F.2d 26, certiorari denied 342 U.S. 941, 72 S.Ct. 553, 96 L.Ed. 700; cf. Smith-Douglass Co., Inc., v. United States, 116 F.Supp. 570, 126 Ct.Cl. 758, 763. Any just and equitable valuation, fairly reflecting a consideration of all relevant facts, must of necessity take into consideration all of the conditions then existing, including lawful legislative and administrative restrictions on the use of the property valued.

But we are, of course, aware that the constitutional requirement that the Government must pay just compensation for what it takes is one which war does not suspend, alter, or modify. United States v. New River Collieries, 262 U.S. 341, 343, 43 S.Ct. 565, 67 L.Ed. 1014; United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516. The principles to be applied by the courts do not vary, whether the power to take be exercised in time of war or in time of peace.

Defendant contends that the bareboat requisition rate should not exceed the basic rate allowed by General Order No. 37 of $1.25 per deadweight ton per month, plus appropriate allowances for speed.

Defendant's position is also untenable. In the first place, this rate is not binding on the courts. Especially in a case where the rate fixed is not one applicable between private parties, but only as between the Government, who is the taker, and the owner, whose property is taken, a rate fixed by the Government should not be conclusive. The ascertainment of just compensation is not an administrative but a judicial function; no power exists in any administrative agen-

cy of the Government to declare what that compensation should be or to prescribe any binding rule in that regard. Monongahela Navigation Co. v. United States, supra, 148 U.S. at page 327, 13 S. Ct. at page 626, 37 L.Ed. 463; Gulf Refining Co. v. United States, 58 Ct.Cl. 559, 576.

While mindful of the complexity of the task confronting the War Shipping Administration, we are of the opinion that any method aimed, as was that of the War Shipping Administration, at the establishment of a rate applicable to all of a large class of dry cargo vessels, is "plainly inaccurate" when applied to any particular vessel. Gulf Refining Co. v. United States, supra, 58 Ct.Cl. at page 577. There can be no presumption as to the correctness or the fairness of a rate made applicable indiscriminately to all vessels of a certain class. Although it may be impracticable, from the Government's standpoint, to determine just compensation for each particular vessel, the right to a judicial determination, if the owner is dissatisfied with the compensation determined for his vessel, is guaranteed by the Merchant Marine Act and by the Fifth Amendment. This court, while giving weight to the administrative determination, must nonetheless determine from the facts proven what it thinks is just compensation. Borland v. United States, 57 Ct.Cl. 411, 415.

We do not mean to imply that the basic rate established by the War Shipping Administration might not, under appropriate circumstances, be coterminous with just compensation for a particular vessel; but we must conclude on the record before us that the bareboat requisition rate fixed by defendant as the yardstick to measure just compensation for all vessels of the *Hawaiian's* class is not "just" in her case.

Plaintiff's vessels were used in the intercoastal trade prior to the outbreak of war in Europe in 1939. The testimony discloses earnings for the last quarter of 1939, the last quarter of 1940, and the last quarter of 1941. For these three periods they were $1.29, $2.23, and $3.27 per deadweight ton per month, respectively. On voyages in foreign trade, commencing in 1941 and terminating in 1941 or 1942, including voyages under time charter with the Maritime Commission, plaintiff's profits, before overhead, depreciation and taxes, were $4.19 per deadweight ton per month. Exclusive of such voyages under time charter with the Maritime Commission, its profits were $5.13 per deadweight ton per month, before overhead, depreciation, and taxes.

On the other hand, the War Shipping Administration had fixed a rate for time charters of vessels such as the *Hawaiian* at a basic rate after May 1942 of $4.15 per deadweight ton per month, which had been agreed to by the owners, including plaintiff, reluctantly, it is true, and after threat of requisition of title by the War Shipping Administration, but nevertheless agreed to. Applied to the *Hawaiian* this would have amounted to $4.35 on a time charter. As near as we can tell from the testimony, plaintiff's average cost of operation of its vessels under requisition time charters, exclusive of overhead, depreciation, and taxes, was $1.89 per deadweight ton per month.[1] This leaves $2.46. Plaintiff accepted this, although under some compulsion. It cannot be denied, however, that the War Shipping Administration "beat the owners down" as much as they could in establishing a rate of hire.

Prior to requisition on a time charter basis, in April 1942, plaintiff had of course been making high profits. But, even in the absence of restrictions, war conditions would no doubt have reduced these profits; except for the restrictions, they would no doubt have been considerably in excess of the figure of $2.46.

Plaintiff's vessel was old. Its useful life was short. This, of course, affects the rate to be paid.

1. Apparently plaintiff's overhead continued even after requisition on a time charter basis.

384

■ None of the things we have mentioned give any satisfactory basis for fixing just compensation, but taking everything into consideration, among others the general characteristics of the vessel, her physical condition, her age, her earnings before requisition on a time charter basis and afterwards, the demand for and supply of shipping space, legislative and administrative restrictions, and the uncertainties of the war, we have concluded that $2.50 a deadweight ton per month is "just" both to the owner and the Government.

■ We do not need to discuss deductible enhancement. The restrictions imposed more than offset any enhancement due to the causes that necessitated the taking. Smith-Douglass Co., Inc., v. United States, 116 F.Supp. 570, 126 Ct. Cl. 758, 767.

■ Plaintiff is entitled to recover from the defendant hire at the rate of $2.50 per deadweight ton per month, less the amounts paid by defendant on account. In addition, plaintiff is entitled to recover interest, not as interest but as a part of just compensation, at the rate of 4 percent per annum on the unpaid balance of each monthly installment, beginning August 1, 1943, and continuing to the payment of the judgment herein.

■ Entry of judgment is suspended pending the incoming of a stipulation by the parties showing the amount due, computed in accordance with this opinion. In the absence of such a stipulation within a reasonable time, the case will be remanded to a Commissioner for a report showing the amount due, computed in accordance with this opinion.

It is so ordered.

JONES, Chief Judge and MADDEN, and LITTLETON, JJ., concur.

LARAMORE, Judge, took no part in the consideration or decision of this case.

Conclusion of Law

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover.

The entry of judgment is suspended until the incoming of a stipulation by the parties, or, in the absence thereof, until the incoming of a report of a Commissioner showing the amount due plaintiff, computed in accordance with this opinion.